UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SCOTT CUSUMANO,

               Plaintiff,

  – against –

ANDREW SAUL,
Commissioner of Social Security,

               Defendant.

**MEMORANDUM DECISION AND ORDER**
19-CV-7043 (AMD)

**ANN M. DONNELLY**, United States District Judge:

    The plaintiff seeks review of the Social Security Commissioner's decision that he is not disabled for the purpose of receiving benefits under Title II and Title XVI of the Social Security Act. For the reasons that follow, I grant the plaintiff's motion for judgment on the pleadings, deny the Commissioner's cross-motion, and remand the case for further proceedings.

## BACKGROUND

    In July of 2016, the plaintiff applied for disability insurance benefits and social security insurance, alleging disability because of bipolar disorder and depression with an onset date of December 30, 2008. (Tr. 77.) The Social Security Administration ("SSA") denied the plaintiff's claims on September 8, 2016. (Tr. 77-93.)

    The plaintiff, a former stockbroker, reported that he had struggled with depression and anxiety for much of his adult life. (Tr. 53-54.) His record shows in-patient treatment for mental health issues as early as 1990, with additional hospitalizations in 2004 and 2008. (Tr. 221, 225-26, 299-303, 588.) Most recently, the plaintiff received outpatient treatment at the Arista Center, where he saw a therapist, Sheldon Tucker, on a weekly basis, and two psychiatrists, Dr. Eve

Sullivan or Dr. Nissan Shliselberg, monthly. (Tr. 52, 587, 620-654.) These doctors diagnosed the plaintiff with Major Depressive Disorder. (Tr. 582, 587-88, 657.)

Administrative Law Judge Gloria Pellegrino held a hearing on August 8, 2018, at which an impartial vocational expert and the plaintiff, represented by counsel, testified. (Tr. 29-74.) In an October 23, 2018 decision, the ALJ denied the plaintiff's disability claim. (Tr. 12-29.) She found that the plaintiff had the following severe impairments: "bipolar [disorder], depression, spinal disc disease and obesity," but that he retained the residual functional capacity ("RFC") to perform "light" work in a "low stress" occupation with "occasional" public contact and therefore was not disabled. (Tr. 17, 19, 23.)

On October 29, 2019, the Appeals Council denied the plaintiff's request for review. (Tr. 1-6.) The plaintiff, represented by counsel, filed this action on December 16, 2019, and both parties moved for judgment on the pleadings. (ECF Nos. 1, 9, 12.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Social Security Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks, citation, and brackets omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record,

including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id*. However, the Court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g).

## DISCUSSION

The plaintiff challenges the ALJ's evaluation of the medical opinions, her consideration of the plaintiff's mental impairments under Listing 12.04, and her RFC determination. (ECF No. 9-1 at 12.) The defendant responds that the ALJ's decision was supported by substantial evidence and was proper in all respects. (EFC No. 12 at 18-32.) As explained below, I conclude that remand is appropriate.

**I.      Treating Physician Rule**

The treating physician rule "requires that the opinion of a claimant's treating physician be accorded 'controlling weight' if it is well supported and not inconsistent with other substantial evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115 (2d Cir. 1998); *see also Schisler v. Sullivan*, 3 F.3d 563 (2d Cir. 1993). If the ALJ decides that the treating physician's opinion does not merit controlling weight, she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks and citation omitted); *accord* 20 C.F.R. §§ 404.1527, 416.927. The factors that the ALJ "must consider" include:

> (i) The frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

3

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *accord* 20 C.F.R. §§ 404.1527, 416.297. Failure to provide "good reasons" for the weight assigned to a treating physician's opinion is a ground for remand. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

A treating physician's input is particularly important when a claimant suffers from mental health related disorders. *See Rodriguez v. Astrue*, No. 07-CV-534, 2009 WL 637154, at *26 (S.D.N.Y. Mar. 9, 2009). "Mental health patients have good days and bad days; they may respond to different stressors that are not always active." *Pagan v. Saul*, No. 18-CV-7012, 2020 WL 2793023, at *6 (S.D.N.Y. May 29, 2020) (internal quotation marks omitted). Accordingly, "the longitudinal relationship between a mental health patient and [his] treating doctor provides the physician with a rich and nuanced understanding of the patient's health that cannot be readily achieved by a single consultative examination." *Id*. (quoting *Bodden v. Colvin*, No. 14-CV-08731, 2015 WL 8757129, at *9 (S.D.N.Y. Dec. 14, 2015); *see also Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (quoting *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013)) ("'ALJs should not rely heavily on the findings of consultative physicians after a single examination.' This concern is even more pronounced in the context of mental illness where, as discussed above, a one-time snapshot of a claimant's status may not be indicative of [his] longitudinal mental health.") (internal citations omitted).

In May or June of 2016, the plaintiff began regular mental health treatment at the Arista Center that included weekly therapy sessions with a licensed social worker and monthly medication management sessions with a psychiatrist. (Tr. 579-654.) On August 6, 2016, Dr. Eve Sullivan, the plaintiff's treating psychiatrist, opined that his "ability to function in a work setting at this time is non-existent" and that "he is currently unable to function on his own." (Tr. 264-66.) In January of 2017, the plaintiff requested a different psychiatrist; he was upset with

4

Dr. Sullivan because she would not prescribe Xanax to help with his insomnia and recommended that he stop taking a "holistic" anti-depressant. (Tr. 624-25.) Dr. Nissan Shliselberg took over the plaintiff's medication management (Tr. 588-89), and on July 9, 2018, after eighteen months of regular treatment, opined that the plaintiff had "extreme" limitations in his ability to "concentrate, persist, or maintain pace" and "adapt or manage" himself and "marked" limitations in his ability to "understand, remember, and apply information" and "interact with others." (Tr. 656.) More specifically, Dr. Shliselberg found that the plaintiff's ability to "maintain concentration for an extended period," "perform activities within a schedule," "maintain regular attendance," "accept instruction and respond appropriately to criticism from supervisors," "get along with coworkers or peers," and "maintain socially appropriate behavior" were all "extremely impaired." (Tr. 656-57.) Sheldon Tucker, the plaintiff's therapist during his entire treatment at the Arista Center, assisted both Dr. Sullivan and Dr. Shliselberg with their opinions regarding the plaintiff's functional limitations. (Tr. 266, 657.)

Dr. Michael Kushner, a consultative examiner, examined the plaintiff once—on August 22, 2016—and concluded that he had "moderate" limitations in "maintaining attention and concentration, maintaining a regular schedule, learning new tasks, and performing complex tasks under supervision," and "moderate to marked" limitations in "relating adequately with others" and "appropriately dealing with stress." (Tr. 269.) Dr. Kushner's prognosis was "somewhat guarded" because the plaintiff reported that he had "been experiencing significant symptoms for some time" and "his symptoms [had] prevented him from holding continuous employment in the past." (Tr. 270.) Dr. Kushner also concluded that the plaintiff would not be able to manage his own funds. (*Id.*)

5

Dr. S. Shapiro, the state agency examiner, never examined the plaintiff, but concluded, based on his review of the plaintiff's medical records, that the plaintiff was "moderately limited" in his abilities to "interact appropriately with the general public," "accept instructions and respond appropriately to criticisms from superiors," and "get along with coworkers and peers without distracting them or exhibiting behavioral extremes." (Tr. 90-91.) Dr. Shapiro found "no significant limitations" in the plaintiff's ability to "ask simple questions and request assistance" or "maintain socially appropriate behavior." (*Id.*)

The ALJ gave "great weight" to Dr. Kushner's opinion because it was "consistent with the medical evidence of the record" and "provides great understanding of the [plaintiff's] overall functioning." (Tr. 21.) The ALJ also gave great weight to Dr. Shapiro's opinion, observing that his opinion was "consistent with the record as a whole." (Tr. 22.) The ALJ found that Dr. Shapiro "adequately considered the [plaintiff's] subjective complaints with specific references to the evidence to support his opinion." (Tr. 22.) She did not point to any specific evidence in the record that supported either Dr. Kushner's or Dr. Shapiro's opinion.

In contrast, the ALJ gave "little" weight to the opinions of Dr. Sullivan and Dr. Shliselberg, the plaintiff's treating psychiatrists. The ALJ declined to give controlling weight to Dr. Sullivan's opinion because it was made only one month after she began treating the plaintiff and was "inconsistent" with her treatment notes, which described the plaintiff's "improvement on medication and relatively normal mental status examinations." (Tr. 21.)[1] While the plaintiff did report some improvement from medication (Tr. 592, 598, 608, 610, 614), the Arista treatment notes also reflect that the plaintiff continued to struggle with depression, insomnia, and

---

[1] In fact, Dr. Sullivan treated the plaintiff in 2007-2008, prior to his 2008 hospitalization at Zucker Hillside, and the plaintiff reinitiated his treatment with Dr. Sullivan in May or June of 2016. (Tr. 225, 267, 412, 586.)

6

his interpersonal relationships up until the time of his administrative hearing (Tr. 596, 602, 620, 628-29, 634-35, 647, 653-54). The ALJ did not acknowledge these limitations. *See Quinto v. Berryhill*, No. 17-CV-24, 2017 WL 6017931, at *14 (D. Conn. Dec. 1, 2017) ("The ALJ is not permitted to cherry pick from the treatment record only evidence that is inconsistent with the treating source's opinion in order to conclude that the opinion should be accorded less weight.").

Nor did the ALJ sufficiently account for the weight she gave Dr. Shliselberg's opinion. Dr. Shliselberg and Mr. Tucker, the plaintiff's therapist, jointly opined that the plaintiff had many "marked" or "extreme" limitations and struggled to "maintain an ordinary routine," "perform activities within a schedule," "maintain regular attendance," "get along with coworkers or peers," and "maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness." (Tr. 656-57.) The ALJ found that "the record at the Arista Center does not support such extreme limitations." (Tr. 21.) In fact, Mr. Tucker's treatment notes are replete with missed appointments (Tr. 622-23, 626-27, 632, 634-37, 639-41, 643-46, 651-21, 654) and references to the plaintiff's inability to maintain a regular schedule or discuss difficult topics (Tr. 628, 633, 635-36, 638, 641-43). The plaintiff often showed up to sessions in house shoes or pajamas (Tr. 641, 643, 645-46), struggled with his family relationships (Tr. 624, 627-28, 648, 654), and had "recurrent and intrusive recollections of a traumatic experience" (Tr. 623, 648, 654-55). These treatment notes support Dr. Shliselberg's conclusion that the plaintiff struggled with many symptoms of depression as well as other mental health issues, and had "no more than minimal capacity to adapt to changes in the environment or to demands that are not already part of his life." (Tr. 665.) Moreover, Dr. Kushner, the consultative examiner, opined that the plaintiff's mental limitations "may *significantly* interfere with the claimant's ability to function on a daily basis." (Tr. 269 (emphasis added).) Neither the Arista records nor the other evidence

in the record undermine or contradict Dr. Shliselberg's opinion. For these reasons, remand is warranted.[2]

## II. Listings Analysis

The plaintiff also challenges the ALJ's determination that his severe impairments of bipolar disorder and depression did not meet or equal Listing 12.04.[3]

When an ALJ finds that a claimant has a medically determinable impairment that is "severe," the ALJ must determine whether the identified "impairment(s) meets or equals a listed impairment in appendix 1." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Each impairment in appendix 1 "is sufficient, at step three, to create an irrebuttable presumption of disability" under the Social Security regulations. *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998); *see* 20 C.F.R. §§ 404.1520(d), 416.920(d) ("If you have an impairment(s)

---

[2] Dr. Adam Zeitlin treated the plaintiff for degenerative disc disease in July of 2018, and concluded he could sit for only fifteen minutes at a time, stand for only twenty minutes at a time, occasionally lift or carry up to twenty pounds and never bend or stoop. (Tr. 658.) The ALJ declined to give controlling weight to Dr. Zeitlin's opinion, concluding that the evidence in the record did not support the limitations that Dr. Zeitlin found. However, the record includes mostly diagnostic referrals and objective testing, and very little information about the course of treatment. On remand, the ALJ should develop the record the plaintiff's degenerative disc disease, and consider whether to seek additional records or to have the plaintiff examined by a consultative examiner.

[3] Listing 12.04 covers depressive, bipolar and related disorders. 20 C.F.R. § 404, Subpt. P, App'x 1. In order to meet this listing, a claimant's conditions must satisfy the criteria in paragraph A and either paragraph B or C of the listing. Under paragraph A, a finding of depressive disorder requires medical documentation of five or more of the following: depressed mood; diminished interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; observable psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; or thoughts of death or suicide. Under paragraph B, there must be "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning:" understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. For paragraph C, there must be "a medically documented history of the existence of the disorder over a period of at least 2 years," as well as evidence of both "medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder" and "minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life."

which . . . is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").

The ALJ acknowledged that the plaintiff exhibited at least five of the symptoms required by part A of Listing 12.04, but found that he did not meet the requirements of parts B or C of the listing. Under part B, the ALJ found that the plaintiff had moderate limitations in "understanding, remembering, or applying information" and "concentrating, persisting, or maintaining pace," and mild limitations in "interacting with others" and "adapting or managing" himself. (Tr. 18.) The ALJ concluded that the plaintiff had "no issues adhering to social standards or maintaining socially appropriate behavior" and that he "retain[ed] the ability to maintain a household; take care of his daily needs and adhere to a daily schedule" (Tr. 18), but did not explain the basis for her conclusions. In her analysis of part C, the ALJ cited Dr. Kushner's report and found that the plaintiff's mental impairments had "persisted for more than two years" and that he participated in regular outpatient therapy, but that the evidence did not show "that the [plaintiff] has achieved only marginal adjustment as . . . the [plaintiff] retains the ability to maintain a household, take care of his daily needs [and] adhere to a daily schedule." (Tr. 19.) She did not refer to the plaintiff's treatment records or the opinions of either of his treating psychiatrists.

The ALJ's conclusion that the plaintiff did not meet the Listing 12.04 criteria is contradicted by the medical and opinion evidence. For example, treating physician Dr. Shliselberg found that the plaintiff met the requirements of both parts B and C of Listing 12.04 because he exhibited extreme limitations in his ability to "concentrate, persist, or maintain pace" and "manage [him]self" and marked limitations in his ability to "understand, remember or apply information" and to "interact with others." (Tr. 656.) Dr. Shliselberg also concluded that the

9

plaintiff had "no more than minimal capacity to adapt to changes in the environment or to demands that are not already part of his life." (Tr. 655.) These conclusions are largely supported by Sheldon Tucker's detailed treatment notes, as discussed above. Dr. Kushner, on the other hand, observed that the plaintiff had "moderate to at times marked limitations" in regard to "relating adequately with others" and "dealing with stress" (Tr. 269), and his mental impairments "may significantly interfere with the claimant's ability to function on a daily basis." This finding supports, rather than contradicts, Dr. Shliselberg's opinion that the plaintiff had achieved only marginal adjustment as measured in part C of the listing. On remand, the ALJ should consider all of the evidence in the record and re-evaluate whether the plaintiff's impairments meet Listing 12.04.

## CONCLUSION

The plaintiff's motion for judgment on the pleadings is granted and the Commissioner's motion is denied. The case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

                                                                  s/Ann M. Donnelly
                                                             ANN M. DONNELLY
                                                             United States District Judge

Dated: Brooklyn, New York
         November 23, 2020